[No. 3,568.]

## STRATTON *v.* GREEN.

45  149
80  225

AUTHORITY OF CONTROLLER TO DRAW WARRANTS. — The authority and duty of the Controller of State to draw a warrant upon the Treasurer, is limited to cases in which he is authorized to draw such warrant by some law which provides a specific appropriation for the payment of the warrant so drawn.

SPECIFIC APPROPRIATION.—A specific appropriation is an act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular demand.

FUND.—The Fund upon which a warrant must be drawn must be one the amount of which is designated by law, and therefore capable of definitive exhaustion.

CONSTRUCTION OF STATUTE. — The seventeenth subdivision of section four hundred and thirty-three, Article VI, of the Political Code, repeals the provision of section six of the Act of 1869-70, in respect to the duty of the Controller to draw warrants in payment of salaries of the Tide Land Commissioners.

APPLICATION for a writ of mandamus to require the Controller of State to draw his warrant in payment of the salary of the petitioner as a member of the Board of Tide Land Commissioners.

The facts are stated in the opinion.

*Haymond,* for Petitioner.

*John L. Love, Attorney General,* for Respondent.

By the COURT:

This is an application for a writ of mandamus to be directed to the Controller of State upon the following facts agreed by the parties:

" I. That the petitioner now is, and since the 1st day of February, 1872, has been a member of the Board of Tide Land Commissioners, duly appointed, qualified, and acting as such.

" II. That the respondent now is, and since the 10th day

of January, 1872, has been Controller of State, duly elected, qualified, and acting as such.

"III. That the salary of each member of the Board of Tide Land Commissioners is two thousand five hundred dollars per annum, payable quarterly out of the General Fund, on the first of January, April, October, and December, respectively.

"IV. That the salary of the petitioner for the quarter ending October 1st, 1872, amounting to six hundred and twenty-five dollars, was duly approved by the State Board of Tide Land Commissioners after the 1st of October, 1872.

"V. That after such salary had been so approved, the Secretary of the Commissioners duly certified the approval of the same to the respondent as Controller.

"VI. That the Legislature failed to make any appropriation for the payment of said salary, except such as is to be found in the Act creating the office.

"VII. That petitioner has demanded of the respondent, Controller, that he draw his warrant upon the General Fund in the State Treasury in favor of petitioner for the said sum · of six hundred and twenty-five dollars, and the respondent has refused and still refuses to do so."

The seventeenth subdivision of section four hundred and thirty-three, Article VI, of the Political Code, regulating the duties of the Controller of State, is as follows: "To draw warrants on the Treasurer for the payment of moneys directed by law to be paid out of the treasury; but no warrant must be drawn unless authorized by law and upon an unexhausted specific appropriation provided by law to meet the same. Every warrant must be drawn upon the Fund out of which it is payable, and specify the service for which it is drawn, when the liability accrued, and the specific appropriation applicable to the payment thereof."

Under the provisions of this section of the Code the au-

thority and duty of the Controller of State to draw warrants upon the Treasurer is in the first instance limited to those cases in which he is authorized by some law to do so, *and* in which the law has also provided a specific appropriation for its payment. By a specific appropriation we understand an Act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand. The Act of 1869–70 (p. 541), in its sixth section, provides that upon the production of the certified approval of the State Board the Controller shall draw his warrant *upon the General Fund* for the payment of the amount, but it can scarcely be claimed that the entire " General Fund " named is specifically appropriated by the Act for the payment of this particular claim. If it has been so appropriated for that purpose the authority to draw the warrant would continue until the General Fund had been exhausted, and then, ceasing for a time, would revive again so soon as other moneys should be received thereafter into that Fund. The Fund upon which a warrant must be drawn must be one the amount of which is designated by law, and therefore capable of definitive exhaustion—a Fund in which an ascertained sum of money was originally placed, and a portion of that sum being drawn an unexhausted balance remains, which balance cannot be thereafter increased except by further legislative appropriation. We think that the provisions of the section of the Code referred to were intended to prescribe a uniform rule of official conduct for the Controller in this respect, and as it is the latest expression of the legislative will it necessarily displaces and by implication repeals the provision of section six of the Act of 1869–70 in respect to his duty to draw the warrant of the petitioner. Our attention has been drawn to the case of *McCauley* v. *Brooks*, 16 Cal. 11, but we prefer the rule announced here in the earlier case of *Redding* v. *Bell*, 4 id. 333, in which the Act of April, 1854 (in almost the identical

words of the Code), received the same construction as that we place upon those words as found in the Code.

Mandate refused.