## Schwab v. Pottstown Zoning Board of Adjustment

*Louis Sager*, for appellants.

*Ronald H. Reynier*, for appellee.

*Gilbert R. Lewis*, for intervenor.

SMILLIE, J., June 24, 1964.—On July 22, 1959, Daniel Pomerantz, trading as Franklin Waste Company, was granted a special exception to expand a nonconforming use of premises at Glasgow and Manatawny Streets, Pottstown, Pa., to carry on a waste paper, metal and plastic scrap yard. On or about June 1, 1962, these premises were leased to Davis Brothers for the operation of their scrap business and the zoning officer of the Borough of Pottstown issued a permit authorizing Davis Brothers to continue the nonconforming use for a period subsequent to June 1, 1962.

Appellants, who are immediate property owners filed an appeal protesting to the Pottstown Zoning Board of Adjustment the continuance of the nonconforming use, alleging it had been voluntarily discontinued for one year prior to June 1, 1962. The board conducted an informal public hearing on September 12, 1962, on the appeal of appellants, at which hearing no oath was re-

quired or administered to any of the witnesses. On October 9, 1963, the board denied appellants' petition and appellant filed this appeal on November 12, 1963.

It was claimed by counsel for the board that administering the oath was waived but such does not appear of record and counsel for appellant vehemently denies a waiver and insists that it was demanded that the oath be administered. All parties agree no oath was in fact administered. The board did not approve the proper and commendable offer of the solicitor for the board when he suggested that he would go to his office and obtain a Bible. The board treated the Bible and the administering of the oath as insignificant or unnecessary. We feel that the solicitor recognized the importance of it and the board should have followed the suggestion of its counsel. From all indications the hearing was conducted casually without the minimum of procedural proprieties.

There appears to be no Supreme Court decision directly on this question although there is dicta in the case of Pumo v. Norristown Borough, 404 Pa. 475 (1961), referring to the administering of the oath at hearings. The court said the following:

"It so happens, however, that each of the witnesses who allegedly was not sworn (or the record does not show he or she was sworn) testified in opposition to the amendment. Thus, the protestants could not possibly have been adversely affected by what was said. Nor can it be maintained that the amendment was predicated on this allegedly unsworn testimony because, as specified, the testimony, sworn or unsworn, was rejected by the final action of the Commission since it approved the amendment. The courts do not upset the formalized action of a duly constituted body because the 'i' in a wholly unnecessary word was not dotted."

In the Pumo case the court said the decision "was

*not* predicated on this *allegedly unsworn* testimony." (Italics supplied.) It should be noted *"allegedly unsworn"* is the court's comment in the Pumo case, whereas in the case herein it was conceded that all testimony was unsworn. In further explanation of why there was no need for sworn testimony in the Pumo case, the court said the decision was not predicated upon the testimony which was given without the oath. The court regarded the testimony which was not under oath in the Pumo case like an undotted "i" in a "wholly unnecessary word", and therefore, being so inconsequential it did not need to be sworn. The Pumo case indicates by inverse inference that were the testimony important and the decision predicated upon it, it should be sworn.

Commissions and boards are acting in increased numbers and, in some instances, under exceedingly loose procedure. Hearings before boards and Commissions and bureaus today deal with fundamental essential individual rights which should not be treated lightly or disposed of casually.

If it be true, as counsel for the protestants stated in open court, that the owner of the junk yard, Pomerantz, who was favored by the board by its decision, had told protestants: "I'm going to conduct a junk yard here and no one can do anything about it," the adherence to every usually prescribed method of assuring a just and fair consideration of the case should have been respected. All citizens of a democracy have the right to have their complaints or pleas for redress of wrongs, imagined or real, heard by an authority which conducts itself with the aura of solemnity which is accorded by recognized standards of procedure. No matter what the status in the pyramid of justice the hearing authority is, it should honor fundamental requirements for a just administration of the office. The decorum of the hearing, the sanctity of the oath, the

opportunity to be heard, these cannot be disregarded without reason or cause. While it is true that a person should tell the truth whether under oath or not, yet in the experience of many years in litigation, the solemnity of a properly administered oath has been established as an effective means of administering justice. Such an oath curbs the tongue of the irresponsibly loquacious, dampens the ardor of the exaggerator, and restrains or prevents falsehood. It has been wisely said "the mills of the Gods grind slow but exceedingly fine" in distributing reward or retribution to man in life. We should not permit inexpert or uncertain tinkering or tampering with the machinery of justice. We should be slow to cast away the ancient and accepted cog of the oath unless it impedes the operations. The moment consumed in solemnly taking the oath may provide an instant in infinity for introspection. And, in that instant of facing one's faith or one's fear, the truth, the whole truth and nothing but the truth may become a compelling necessity. Testimony so given may have more chance for verity, whereby the inquiry has more opportunity for honor. Even if the oath is not highly respected it adds one more hurdle to the abuse of the process of justice as administered by tribunals, boards, commissions or committees. The fact that criminal prosecution may follow testimony under oath could be a further deterrent to careless, loose or untruthful testimony.

This appeal, not taken within 30 days, would normally be fatal, were it not for the fact that the hearing itself was a nullity. An appeal must be taken within 30 days. Since we feel that the failure to administer the oath was fundamental error, it would follow that the hearing was a nullity and consequently the 30-day appeal did not apply.

By this opinion, we do not in any way suggest that the board's final findings should be any different from

that originally reached, but the failure to administer the oath under the circumstances of this particular case raises such a fundamental issue as to the rights of individuals that it must be remanded to the board.

*Order*

And now, June 24, 1964, the Pottstown Zoning Board of Adjustment is reversed and the case is remanded back to the board to take testimony under oath in accordance with this opinion.